UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINASTRA USA CORPORATION,<br><br>Petitioner,<br><br>v.<br><br>JOHN ZEPECKI,<br><br>Respondent. | Case No. 18-cv-00725-WHO<br><br>**TEMPORARY RESTRAINING ORDER** |

**INTRODUCTION**

Petitioner Finastra USA Corp. ("Finastra") seeks a temporary restraining order ("TRO") to enjoin former employee respondent John Zepecki from participating in a hearing before the California Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE") so that it can enforce the arbitration clause of an employment agreement between the parties, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4. Because I find that Finastra has demonstrated a likelihood of success on the merits, that it would suffer irreparable harm by being subjected to the DLSE hearing, and that the public interest and balance of equities each weigh in Finastra's favor, I GRANT Finastra's application for a TRO.

**BACKGROUND**

**I.  FACTUAL BACKGROUND**

Though the parties have disagreements as to how the events leading to this application unfolded, the relevant facts are largely undisputed. On October 6, 2016, Zepecki signed an employment agreement with Finastra (then called D+H USA Corp.) for the position of Group Head, Global Lending Product Management and Center of Excellence, a senior management position. Petition to Compel Arbitration, Ex. 1, Employment Contract (Dkt. No. 1). The base

salary for this position was $400,000, with a target total compensation of $750,000 when considering other forms of compensation. *Id.* at 2. The employment contract contained an arbitration clause, which requires arbitration of any dispute "concerning or relating to this Agreement, [Zepecki's] employment by the Company, or the termination of [Zepecki's] employment" under the "Employment Arbitration Rules & Procedures of JAMS" if non-binding mediation does not resolve the dispute. *Id.* ¶21.

Zepecki testifies that, at the time that he signed the employment contract, he was assured that the agreement contained standard terms, an assertion that Finastra disputes. *Compare* Zepecki Decl. ¶12 (stating that Missy Kessinger told him that employment contract contained standard terms)*, with* Kessinger Decl. ¶¶11-12 (noting that Zepecki's employment contract was prepared specifically for him). In Finastra's view, the employment agreement contained terms expressly drafted for Zepecki. Kessinger Decl. ¶¶11-12. Zepecki did not have receive legal advice regarding the employment agreement, and Finastra did not advise that he could or should obtain legal counsel. Zepecki Decl. ¶14. Zepecki made no changes to the agreement prior to signing it; he testifies that he felt any changes would jeopardize the job offer. *Id.* ¶15. Zepecki did not raise these concerns nor did he express discontent with the terms of the agreement at the time of signature. Kessinger Decl. ¶9. In fact, in the cover letter accompanying the signed agreement, Zepecki wrote, "I reviewed the agreement and everything looks fine." *Id.*

For the purposes of this order, I do not find it necessary to resolve the factual disputes concerning the end of Zepecki's employment. After a reorganization following the merger of two companies, one of which was Zepecki's employer, resulted in the formation of Finastra, Zepecki left his job in August 2017. After that, Zepecki's counsel called Finastra to request severance pay for Zepecki. Harrison Decl. ¶4 (Dkt. No. 34). Finastra's counsel responded to the demand for severance pay with two letters, dated August 24 and September 6, 2017, explaining why Zepecki was not entitled to severance pay. *Id.* ¶5. On September 7, 2017, Zepecki's counsel wrote to counsel for Finastra, requesting mediation as to allegedly outstanding bonus and severance pay. Quackenbush Decl. ¶7. The following day, counsel for Finastra rejected Zepecki's request for mediation. *Id.* ¶8.

On September 15, 2017, Zepecki filed a claim with the California Labor Commission for wages owed to him by Finastra. *Id.* ¶ 9. On October 5, 2017, having accepted the claim, the Labor Commission sent a "Notice of Claim and Conference" to both parties to appear at a conference. *Id.* ¶ 10. The conference was held on November 8, 2017; Finastra did not appear. *Id.* On December 1, 2017, Zepecki signed a complaint as prepared by the Labor Commissioner, reflecting his wage claim against Finastra. *Id.* ¶ 11. On January 17, 2018, counsel for Finastra requested that Zepecki participate in mediation and withdraw his DLSE Complaint. *Id.* ¶ 12. Zepecki did not do so, and on January 22, 2018, Zepecki's counsel offered to settle the claims for $508,000. *Id.* ¶ 14.

On February 2, 2018, the Department of Industrial Relations, Labor Commissioner Office, sent a notice of hearing to Zepecki and Finastra. *Id.* ¶ 19. On the same day, Finastra filed a petition to compel arbitration against Zepecki. Dkt. No. 1. On February 8, 2018, Finastra filed a Ex Parte Application for a Temporary Restraining Order. Dkt. No. 16. On February 19, 2018, the parties agreed to mediation. *See id.*, Ex. 12, Letter from K. Harrison to W. Quackenbush (Feb. 19, 2018) (Dkt. No. 29-12). I heard oral argument on this application on March 7, 2018.

**LEGAL STANDARD**

The analysis for granting a TRO is "substantially identical" to that for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In order to obtain a TRO, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009) (internal citations removed). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

The question on the irreparable harm factor is "whether the applicant will be irreparably injured absent a stay." *Leiva–Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (internal quotation marks and citations omitted). Such irreparable harm must not simply be "possible" –

3

1  instead, the moving party is required to "demonstrate that irreparable injury is likely in the absence
2  of an injunction." *Id*. (internal quotation marks and citations omitted) (emphasis in original). "A
3  plaintiff must do more than merely allege imminent harm sufficient to establish standing; a
4  plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive
5  relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in
6  original).

**DISCUSSION**

**I.   LIKELIHOOD OF SUCCESS ON THE MERITS**

Zepecki argues that Finastra cannot demonstrate a likelihood of success on the merits as to its petition to compel arbitration because (1) the employment agreement is unenforceable due to both procedural and substantive unconscionability and (2) by rejecting Zepecki's request for mediation, Finastra waived its right to arbitration. Finastra takes the opposite view. I address each argument in turn.

**A.   Whether the Employment Agreement is Unconscionable**

In order to assert an unconscionability contract defense successfully, a party seeking to avoid arbitration must prove both procedural and substantive unconscionability by a preponderance of the evidence. *King v. Hausfeld*, No. C-13-0237-EMC, 2013 WL 1435288, at *8 (N.D. Cal. Apr. 9, 2013); *see also Engalla v. Permanente Med. Group, Inc*., 15 Cal. 4th 951, 972 (1997) ("[A] party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."). If a party proves both types of unconscionability, the court must determine if the unconscionable terms can be severed and the remainder of the agreement enforced. *Lara v. Onsite Health, Inc*., 896 F. Supp. 2d 831, 841 (N.D. Cal. 2012).

**1.   Procedural Unconscionability**

Zepecki argues that the employment agreement is procedurally unconscionably because, in his view, (1) the arbitration clause was buried in a 12-page document; (2) Finastra did not provide a copy of the JAMS Employment Arbitration Rules and Procedures; and (3) Finastra presented Zepecki with the employment agreement on a "take it or leave it" basis; and (4) the employment

4

contract was essentially an adhesion contract. Finastra responds that because Zepecki was a sophisticated party with equal bargaining power in the execution of the contract, he cannot establish that the employment agreement is procedurally unconscionable. The facts support Finastra's view of the employment contract.

"Procedural unconscionability exists in a contract of adhesion, one presented by the stronger party to the weaker party on a take-it-or-leave-it basis. In determining whether an agreement is procedurally unconscionable, courts focus on two factors: oppression and surprise. Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Performance Team Freight Sys., Inc. v. Aleman*, 241 Cal. App. 1233, 1247 (2015) (citations and internal quotations omitted).

Zepecki can demonstrate neither oppression nor surprise during the execution of his employment contract. Zepecki is a well educated man who entered into an employment agreement for an executive level job with six-figure compensation. Kessinger Decl. ¶10. Prior to signing the employment agreement, he told Finastra that he was also considering other employment opportunities. *Id.* ¶¶ 9, 13. He is a sophisticated party, and the fact that he told Finastra that he was also considering other opportunities contradicts his assertion that he was in an unequal bargaining position such that the employment agreement was presented on a "take it or leave it" basis. It is unlikely that oppression played a part in him signing the employment contract.

Zepecki, relying on *Lara*, 896 F. Supp. 2d. at 841, argues that Finastra's failure to attach arbitration rules or information about the rules supports his claim of surprise. The court in *Lara* stated that while the failure to attach applicable arbitration rules added to procedural unconscionability, it was not dispositive. *Id.* More recent cases have found that failure to provide a copy of the arbitration rules alone is insufficient to show procedural unconscionability. *See, e.g.*, *Lane v. Francis Capital Mgmt.*, 224 Cal. App. 4th 676, 690 (2014); *see also Bigler v. Harker Sch.*, 213 Cal. App. 4th 727, 737 (2013) (holding that the failure to attach arbitration rules to the arbitration agreement "is of minor significance to [] analysis").

5

Zepecki implies that because the arbitration clause was in a 12 page document, it was "hidden within a prolix printed form." This argument is without merit given Zepecki's level of sophistication and the relatively short length of the contract. Zepecki explicitly stated that he reviewed the contract prior to signing it. It is unlikely that surprise played a part in Zepecki signing the employment contract containing the arbitration clause.

Accordingly, I find that Zepecki cannot demonstrate that the employment contract is procedurally unconscionable.

### 2. Substantive Unconscionability

Though unnecessary given that Zepecki cannot demonstrate procedural unconscionability, I also address whether the agreement is substantively unconscionable. Zepecki argues that the employment agreement is substantively unconscionable because the agreement, specifically the arbitration clause, forces him to waive the protections afforded by a DLSE hearing without "provid[ing]. . . an accessible and affordable arbitral forum for resolving wage disputes." *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1146 (2013) (*Sonic II*). Finastra contends that arbitration per the employment agreement will be accessible and affordable given that the parties have agreed to arbitrate in San Francisco, where Zepecki lives, and because Finastra must cover all expenses for arbitration.

An arbitration agreement is not substantively unconscionable if it provides "an accessible and affordable arbitral forum." *OTO, LLC v. Kohn*, 14 Cal. App. 5th 691, 709 (2017); *see also Sonic II,* 57 Cal. 4th at 1146. Zepecki argues that the agreement does not provide the requisite forum because the employment agreement, as written, requires arbitration in Orlando, Florida and the fee-shifting propositions and rapid resolution of a DLSE hearing are not preserved. The language in the agreement does not require arbitration in Orlando, Florida but rather puts forth the location as a default should the parties not be able to agree on a location. Roufogalis Decl., Ex. A, Employment Contract, § 21(a) ("Unless the parties agree to a different location, the arbitration shall take place in Orlando, Florida . . . ."). Finastra agreed that the arbitration would be held in the city of Zepecki's residence. And while the agreement does not detail which party is responsible for the arbitration fees, under JAMS rules, the employer pays 100% of JAM's fees and

6

1  costs, including the arbitrator's fees.  In light of these facts, Zepecki's argument that the

2  employment agreement is substantively unconscionable is without merit.

3  Because a party seeking to avoid arbitration must prove both procedural and substantive

4  unconscionability by a preponderance of the evidence, Zepecki has not carried his burden.

### B. Whether Finastra Waived Right to Arbitrate

Relying on *Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 448 (2010), Zepecki argues that the statement from Finastra's counsel rejecting his September 7 request for mediation constitutes a waiver of the Finastra's contractual right to arbitrate.  Finastra argues that counsel's statement was not intended to reject arbitration and given that it has continually insisted on arbitration as a way to resolve the disputes at hand, the statement cannot constitute a waiver of its right to arbitration.  I find Finastra's argument persuasive and Zepecki's reliance on *Lewis* misplaced.

Federal and state law reflect a strong public policy favoring arbitration as "a speedy and relative inexpensive means of dispute resolution." *St. Agnes Medical Ctr. v. PacifiCare of Cal.,* 31 Cal. 4th 1187, 1204 (2003); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (noting that goal of arbitration is "efficient and speedy dispute resolution").  Federal and California courts may refuse to enforce an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract," including waiver.  9 U.S.C. § 2; Cal. Code Civ. Proc. § 1281; *see also St. Agnes,* 31 Cal. 4th at 1194–95.  Based on the public policy favoring arbitration, claims of waiver receive "close judicial scrutiny" and the "party seeking to establish a waiver bears a heavy burden." *St. Agnes,* 31 Cal. 4th at 1195.

In *Lewis*, the court noted that "[a] waiver of the right to arbitrate *may* properly be implied from any conduct which is inconsistent with the exercise of that right." 205 Cal. App. 4th at 448 (emphasis added).  The court found that the defendant in the case had waived its right to arbitrate after a series of actions over the course of five months that were inconsistent with the exercise of the right to arbitrate. *Id.* at 449.  These actions included litigating the merits of the case brought against it through two demurrers and a motion to strike as well as coupling its motion to compel arbitration with a motion to strike the plaintiff's complaint and dismiss the entire action based on

failure to file a timely second amended complaint. *Id.*

The finding of waiver in *Lewis* does not support waiver in the instant case. Waiver is the intentional relinquishment of a known right. Here, Finastra demanded arbitration immediately after it became aware of the DLSE claim. Harrison Decl. ¶4. Zepecki's initial request for mediation did not mention the employment contract and occurred prior to the commencement of any legal proceedings. Further, the parties have since agreed to mediation. These facts are insufficient for Zepecki to bear his "heavy burden" to establish waiver. Finastra has not waived its right to arbitration.

### C. Finastra Demonstrates a Likelihood of Success on the Merits

Zepecki has failed to demonstrate that the employment agreement unenforceable due to procedural and substantive unconscionability and that by rejecting Zepecki's request for mediation, Finastra waived its right to arbitration. Accordingly, Finastra has demonstrated a likelihood of success on the merits as to its petition to compel arbitration.

## II. IRREPARABLE HARM

Finastra argues that without the TRO, it will face irreparable harm by being forced to forego its arbitration rights for the DLSE hearing. Zepecki contends that Finastra has failed to meet its burden to show the requisite level of harm for a TRO because it has presented no evidence that a delay in the commencement of arbitration would cause any irreparable harm. Further, Zepecki claims that Finastra's injury would be purely financial, whereas Finastra is claiming an injury to a right, which is not an irreparable injury.

Some district courts have found that a party appealing a denial of a motion to compel arbitration will likely suffer irreparable harm absent a stay. *See, e.g.*, *Winig v. Cingular Wireless LLC*, No. C-06-4297-MMC, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006). Courts find such harm irreparable because the Ninth Circuit has held that if a party "must undergo the expense and delay of a trial before being able to appeal [an order denying a motion to compel arbitration], the advantages of arbitration-speed and economy-are lost forever," a loss the Ninth Circuit describes as "serious, perhaps, irreparable." *See Alascom, Inc. v. ITT North Electric Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984). This reasoning applies. If denied the TRO, Finastra would be subject to the

DLSE hearing and the procedural requirements that go along with it. This includes an appealable decision that will likely extend the process longer than that of binding arbitration. Essentially, Finastra will lose its bargained for right. This is an irreparable harm.

**III. PUBLIC INTEREST**

California law, like federal law, generally "favors enforcement of valid arbitration agreements" absent grounds for revocation of the arbitration agreement. *Armendariz*, 24 Cal. 4th at 99. As discussed above, Zepecki is unlikely to establish that the employment agreement, and consequently the arbitration agreement, are procedurally and substantively unconscionable. Accordingly, public policy and public interest favors Finastra and the enforcement of the arbitration clause.

**IV. BALANCE OF EQUITIES**

Zepecki argues that the balance of equities favor him because he will suffer prejudice by loss of access to an "economical, efficient mechanism for resolving wage disputes." Finastra contends that Zepecki will suffer no harm by being required to fulfil his contractual obligations. I agree. JAMS arbitration rules mandate that Finastra shoulder the cost of arbitration, and Finastra has agreed that arbitration, should it be necessary following mediation, will take place in San Francisco, where Zepecki resides. Further, the employment agreement contained an enforceable arbitration agreement that Zepecki is obligated to uphold. Allowing him to sidestep that obligation would prejudice Finastra. Accordingly, the balance of the equities weigh in favor of Finastra.

In sum, Finastra has demonstrated a likelihood of success on the merits and that it would suffer irreparable harm by being subjected to the DLSE hearing. It has also established that the public interest and the balance of equites each weigh in its favor. Based on the facts demonstrated, I find that injunctive relief is merited. Accordingly, I GRANT Finastra's application for a TRO.

**CONCLUSION**

For the reasons discussed above, I GRANT Finastra's ex parte application for TRO. Zepecki is enjoined from proceeding any further with his wage claims before the DLSE while I

9

consider the merits of Finastra's petition to compel arbitration. The parties shall either submit a stipulation regarding the schedule for briefing the petition to compel arbitration or file a Joint Case Management Statement on March 20, 2018. The Statement shall also describe the status of the mediation. I will hold a Case Management Conference on March 27, 2018 at 2:00 p.m.; the Case Management Conference that had been scheduled for May 1, 2018 is VACATED.

**IT IS SO ORDERED.**

Dated: March 9, 2018

William H. Orrick
United States District Judge